**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**

|  |  |  |
|---|---|---|
| LIONEL EDWARDS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Action No. 2:18cv121 |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| Acting Commissioner, | ) | |
| Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## <u>REPORT AND RECOMMENDATION</u>

This matter is before the Court on Plaintiff Lionel Edwards' ("Plaintiff") First Amended Complaint, ECF No. 24, filed pursuant to 42 U.S.C. § 405(g) seeking judicial review of the final decision of the Defendant Nancy A. Berryhill, the Acting Commissioner of the Social Security Administration ("the Commissioner"), denying Plaintiff's claim for a period of disability and Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act ("SSA"). Plaintiff filed a Motion for Summary Judgment and memorandum in support, ECF Nos. 29-30, and the Commissioner filed a Cross Motion for Summary Judgment and memorandum in support, ECF Nos. 31-32, which are now ready for recommended disposition. This action was referred to the undersigned United States Magistrate Judge ("the undersigned") pursuant to 28 U.S.C. §§ 636(b)(1)(B)-(C), Federal Rule of Civil Procedure 72(b), Eastern District of Virginia Local Civil Rule 72, and the April 2, 2002 Standing Order on Assignment of Certain Matters to United States Magistrate Judges. After reviewing the briefs, the undersigned makes this recommendation without a hearing pursuant to Federal Rule of Civil Procedure 78(b) and

Local Civil Rule 7(J).  For the following reasons, the undersigned **RECOMMENDS** that Plaintiff's Motion for Summary Judgment, ECF No. 29, be **GRANTED**, the Commissioner's Motion for Summary Judgment, ECF No. 31, be **DENIED**, and the final decision of the Commissioner be **VACATED** and **REMANDED**.

## I. PROCEDURAL BACKGROUND

On July 28, 2014, Plaintiff protectively filed his application for DIB and SSI, alleging an onset date of March 12, 2014, due to lower back injury and injury to both hips.  R. at 62.  His application was initially denied on October 3, 2014, and again denied upon reconsideration on April 9, 2015.  R. at 82-84, 96-98.  Plaintiff then requested a hearing in front of an administrative law judge, which was conducted on February 9, 2017.  R. at 30, 106, 122.  Administrative Law Judge Kerith Cohen ("the ALJ") issued a decision denying Plaintiff's DIB and SSI applications on March 28, 2017.  R. at 13-25.  Plaintiff then filed a request with the Appeals Council to reconsider the ALJ's decision, which was denied by the Appeals Council on January 9, 2018, following receipt of additional evidence.  R. at 5-9.  The Appeals Council reviewed the ALJ's decision but found that Plaintiff's reasons for objecting did not provide a basis for changing the ALJ's decision, making the ALJ's decision the Commissioner's final decision.  R. at 5.  At no time during the administrative process did Plaintiff argue or assert that ALJs are inferior officers subject to the Appointments Clause.

Having exhausted his administrative remedies, on March 6, 2018, Plaintiff filed his first complaint for judicial review of the Commissioner's decision.  ECF No. 3.  The Commissioner filed an Answer on May 14, 2018.  ECF No. 8.  The matter was referred to the undersigned U.S. Magistrate Judge ("the undersigned") on May 18, 2018.  ECF No. 10.  The Parties filed cross motions for summary judgment. ECF Nos. 14, 16.  On August 6, 2018, Plaintiff filed a Motion for

Leave to Amend Complaint and memorandum in support seeking to add Count II, which challenges the constitutionality of the Commissioner's decision in Plaintiff's case. ECF No. 18, attach. 1. The Commissioner consented to the filing of Plaintiff's First Amended Complaint. *Id.* at 2. The Court then entered an Order setting a hearing on Plaintiff's Motion for Leave to Amend Complaint. ECF No. 21. The Court held a hearing on September 20, 2018.[1] ECF No. 22. Thereafter, on October 19, 2018, the Court granted Plaintiff's Motion for Leave to Amend Complaint and deemed Plaintiff's Amended Complaint ("Complaint") properly filed. ECF No. 23. On November 1, 2018, the Commissioner filed her Answer to the Complaint. ECF No. 25. On November 2, 2018, the Court granted the parties leave to file new cross-motions for summary judgment, ECF No. 26, after which the parties withdrew their earlier cross-motions for summary judgment. ECF Nos. 27-28. On December 3, 2018, Plaintiff filed his second Motion for Summary Judgment and supporting memorandum, ECF Nos. 29-30, and on December 21, 2018, the Commissioner filed her second Cross-Motion for Summary Judgment and supporting memorandum, ECF Nos. 31-32. On January 3, 2018, Plaintiff filed a response to the Commissioner's Cross-Motion for Summary. ECF No. 33. Therefore, the matter is now ripe for recommended disposition.

## II. RELEVANT FACTUAL BACKGROUND

Plaintiff was born on January 13, 1965, and was 49 years old at the time of his alleged onset date of disability, making him a "younger individual" under the SSA's regulations. *See* R. at 34, 62; *see also* 20 C.F.R. § 416.963(c) (defining anyone under the age of fifty as a "younger person."). On February 9, 2017, Plaintiff appeared, represented by Stan Clark, Esq.,[2] and testified before the ALJ at the administrative hearing. R. at 30, 34-51. The Plaintiff's fiancée, Iris Mullins,

---

[1] This hearing was held jointly with another case involving the same issue. ECF No. 22.
[2] Plaintiff is now represented by John Goss, Esq.

R. at 30, 52-56, and an impartial vocational expert ("VE"), Linda Augins, R. at 30, 56-61, also appeared and testified.  The record included the following factual background for the ALJ to review:

## A. Plaintiff's Medical History

On the date of Plaintiff's alleged onset date of March 12, 2014, Plaintiff was in a motor vehicle accident, went to the Emergency Room, and was diagnosed with back strain and prescribed medication.  R. at 277.  Shortly thereafter Plaintiff began seeing a chiropractor at Churchland Chiropractic several times a week between March 18, 2014, and April 30, 2014.  R. at 308-323. On May 1, 2014, Plaintiff went to Wardell Orthopedics and took x-rays which revealed right and left sacroiliac joint sprains, right and left lumbar facet sprains, and right and left strains that aggravated preexisting hip arthritis.  R. at 348.  Plaintiff underwent physical therapy between June 23, 2014, and July 7, 2014.  R. at 338.  Plaintiff continued treatment with Wardell Orthopedics until October 17, 2014, when Dr. Wardell wrote a letter that stated Plaintiff had reached maximum medical improvement, Plaintiff continued to experience significant pain, and Dr. Wardell believed Plaintiff was totally disabled.  R. at 351.  Plaintiff went to Virginia Orthopedic and Spine Specialists on January 15, 2015, and was referred for an MRI, which showed prominent disc disease at L4-L5.  R. at 355-58.  Plaintiff continued treatment with Virginia Orthopedic and Spine Specialists but saw little to no improvement despite injections and prescription medications.  R. at 524-25, 540-550, 562, 579, 582-83, 586.

## B. Hearing Testimony

At the hearing, Plaintiff testified that he was 52 years old, he completed high school, and lived with his fiancée.  R. at 35.  Plaintiff was able to read, write, and do basic math.  R. at 36. Plaintiff had a valid driver's license but drove "very rare[ly]."  *Id.*  Plaintiff testified that he stopped

working as a landscaper because of a March 2014 motor vehicle accident during which he hurt his back. R. at 37. Plaintiff had problem with his back prior to the March 2014 accident. R. at 38. Plaintiff testified he had continual daily pain in his lower back, intermittent pain in his hip, as well as numbness and weakness in his right leg. R. at 40-43. Plaintiff testified he had problems performing activities of daily living, could not wash dishes, vacuum, or prepare meals, and needed assistance to dress and maintain personal hygiene. R. at 44-45. Plaintiff testified he took a lot of over the counter medication to ease his pain because he did not have insurance and could not afford prescription medication. R. at 50. Plaintiff often visited the emergency room for back pain and would temporarily be prescribed medication following those visits. R. at 50. Plaintiff's fiancée, Iris Mullins, testified that she has known Plaintiff for thirty-three years and lived with him for five years. R. at 52-53. She testified that he had significant back pain and she regularly made him breakfast, helped him in the shower, and dressed him. R. at 53-55.

At the hearing, the VE was presented with a total of three hypotheticals. The first hypothetical presented asked the VE to consider an individual with Plaintiff's age, education, and job history limited to performing light work as defined in the regulations, except that individual should never climb ladders, ropes, or scaffolds with all other postural movements to be performed occasionally, that the individual should never be exposed to machinery or unprotected heights, and that the individual – due to pain and similar symptoms – can maintain concentration, persistence, pace, and attention sufficient to perform simple, routine, and repetitive tasks throughout a regular workday with normal breaks but should perform no fast-paced, strict quota-based, assembly line, or production-type work. R. at 57-58. The VE testified that such an individual could perform work as a parking lot attendant, photocopying machine operator, or sorter. R. at 58. For the second hypothetical, the VE testified that, assuming the same hypothetical individual but adding that the

5

individual could only stand and walk for four hours in an eight-hour workday, such a person would be limited to reduced light jobs and such limits would preclude the individual from performing work as a parking lot attendant, photocopying machine operator, and sorter but that person could perform work as a ticket seller, mail sorter, or parking lot cashier. R. at 58-59. For the third hypothetical, the VE testified that, assuming the same number and lengths of rest periods Plaintiff testified to,[3] such breaks would not be consistent with competitive employment and that an employer would tolerate an employee being off task no more than ten to fifteen percent of the workday. R. at 59. The VE then testified that Plaintiff's testimony about the number of times he needed to switch positions between standing, sitting, and laying down would not render an individual off task. R. at 59-60. The VE further testified that, regarding Plaintiff's testified-to irritability, if someone were irritable to co-workers, the general public, or supervisors to the extent it means they are off task or causing disruption in the workplace more than fifteen percent of the day, such irritability would not be tolerated. R. at 60.

### III. THE ALJ'S FINDINGS OF FACT AND CONCLUSIONS OF LAW

A sequential evaluation of a claimant's work and medical history is required in order to determine if the claimant is eligible for benefits. 20 C.F.R. §§ 404.1520, 416.920; *Mastro v. Apfel*, 270 F.3d 171, 177 (4th Cir. 2001). The ALJ conducts a five-step sequential analysis for the Commissioner, and it is this process that the Court examines on judicial review to determine whether the correct legal standards were applied and whether the resulting final decision of the Commissioner is supported by substantial evidence in the record. *Id.* The ALJ must determine if:

> (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment included in

---

[3] Plaintiff testified "when I'm doing any type of activity it put [sic] a strain on my back. I pretty much have to rest, lay around and I have to stand from time-to-time." R. at 43. Plaintiff also testified he could only stand up or walk around for "ten good minutes before I have to kind of take it easy and relax, to make the pain kind of subside a little bit." R. at 47.

> the Administration's Official Listings of Impairments found at 20 C.F.R. Pt. 404,
> Subpt. P, App. 1; (4) the impairment prevents the claimant from performing past
> relevant work; and (5) the impairment prevents the claimant from having
> substantial gainful employment.

*Strong v. Astrue*, No. 8:10-cv-00357, 2011 WL 2938084, at *3 (D.S.C. June 27, 2011) (citing 20

C.F.R. §§ 404.1520, 416.920); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (noting that

substantial gainful activity is "work activity performed for pay or profit."); *Underwood v. Ribicoff*,

298 F.2d 850, 851 (4th Cir. 1962) (noting that there are four elements of proof to make a finding

of whether a claimant is able to engage in substantial gainful activity). "An affirmative answer to

question one, or negative answers to questions two or four, result in a determination of no

disability. Affirmative answers to questions three or five establish disability." *Jackson v. Colvin*,

No. 2:13cv357, 2014 WL 2859149, at *10 (E.D. Va. June 23, 2014) (citing 20 C.F.R. § 404.1520).

Under this sequential analysis, the ALJ made the following findings of fact and conclusions

of law: First, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his

application date of July 28, 2014. R. at 18. Second, the ALJ determined that Plaintiff suffered

from the following severe impairments: spine impairment, hip impairment, obesity. *Id.* The

aforementioned impairments were found to be severe as they caused significant limitations in the

Plaintiff's ability to perform basic work activities. *Id.* The ALJ determined Plaintiff does not have

any impairment or combination of impairments that meet or medically equal the severity of one of

the listed impairments in 20 C.F.R. § 404, subpart P, appendix 1, such as those under

musculoskeletal system, respiratory disorders, cardiovascular system, including listings 1.02 and

1.04. *Id.*

Third, the ALJ determined that Plaintiff had the RFC to perform light work as defined by

the SSA regulations, except that Plaintiff could only stand and/or walk four hours and sit for four

hours in an eight-hour workday with normal breaks, could never climb ladders, ropes, or scaffolds

but could perform all other postural movements occasionally, should never be exposed to hazardous machinery or unprotected heights, is able to perform simple, routine, and repetitive tasks throughout a regular eight-hour workday with normal breaks but should not perform fast-paced, quota-based, assembly line, or production-type work. R. at 19.

While the ALJ determined that Plaintiff's medically determinable impairments could reasonably be expected to cause the symptoms alleged by Plaintiff, the ALJ found that "[Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in the decision. Accordingly, these statements have been found to affect the [Plaintiff]'s ability to work only to the extent they can reasonably be accepted as consistent with the objective medical and other evidence." R. at 20. The ALJ noted that Plaintiff did not use an assistive device for ambulating or balance, he could drive, and he could care for himself when his fiancée was at work. R. at 21. Plaintiff took non-prescription medication because he could not afford regular medical treatment, but free and low cost medical clinics are available. *Id.* During emergency room visits he did not always report lower back pain, did not appear in acute distress, and had normal mood and affect. *Id.* The ALJ concluded that Plaintiff's conservative course of treatment did not support the extent of his alleged pain and symptoms. *Id.*

The ALJ detailed Plaintiff's medical history and treatment prior to and following the March 12, 2014 motor vehicle accident. R. at 21-23. The ALJ afforded significant weight to the state agency medical consultants' opinions that Plaintiff can perform less than a full range of light work, no weight to Dr. Wardell's opinion that Plaintiff is unemployable and totally disabled because he provided no explanation for his conclusory opinion, which is an opinion on a matter reserved to the Commissioner, little weight to Dr. Arora's opinion that the claimant is limited to

8

sedentary/light work with proper medication because Dr. Arora did not define terms used or provide a basis for her opinion, and little weight to Plaintiff's fiancée because her opinions were generally consistent with Plaintiff's alleged limitations but inconsistent with the medical evidence of record. R. at 23. The ALJ concluded that Plaintiff's RFC was supported by Plaintiff's conservative course of treatment, conservative medications, objective medical evidence, the clinical signs and findings, Plaintiff's activities of daily living, opinion evidence, and the medical record as a whole. *Id.*

Fourth, the ALJ determined that Plaintiff had no past relevant work. R. at 24.

Finally, the ALJ determined Plaintiff had the RFC to "perform a full range of light work . . . [h]owever, the [Plaintiff]'s ability to perform all or substantially all of the requirements of this level of work has been impeded by additional limitations." *Id.* Considering the extent such additional limitations would erode the unskilled light occupation base, and consistent with the VE testimony, the ALJ determined that work existed in significant numbers in the national economy for Plaintiff based on his age, education, work experience, and RFC, including positions such as a ticket seller, mail sorter, or parking lot cashier. R. at 24-25.

## IV. STANDARD OF REVIEW

Under the Social Security Act, the Court's review of the Commissioner's final decision is limited to determining whether the decision was supported by substantial evidence in the record and whether the correct legal standard was applied in evaluating the evidence. 42 U.S.C. § 405(g); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966).

In determining whether the Commissioner's decision is supported by substantial evidence, the Court does not "re-weigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the [Commissioner]." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). If "conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for the decision falls on the [Commissioner] (or the [Commissioner's] delegate, the ALJ)." *Id.* (quoting *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987)). Accordingly, if the Commissioner's denial of benefits is supported by substantial evidence and applies the correct legal standard, the Court must affirm the Commissioner's final decision. *Hays*, 907 F.2d at 1456.

## V. ANALYSIS

Plaintiff's Amended Complaint presents two claims: 1) the ALJ's decision is unsupported by substantial evidence; and 2) The Commissioner's decision is unconstitutional and void because the agency's disability determination in Plaintiff's case violates the Constitution since the relevant acting commissioners, Appeals Council members, and the ALJ acted as officers of the United States but were not appointed consistent with the Appointments Clause. ECF No. 24 at 2-3.

The Court shall address Plaintiff's second claim first as a finding in Plaintiff's favor on that issue would prompt a remand of Plaintiff's case back to the agency and render moot the Court's review of the ALJ's decision on the merits of Plaintiff's substantive disability claim.

### A. The Court May Not Reach the Merits of Plaintiff's Appointments Clause Challenge.

The Appointments Clause requires the President, with the advice and consent of the Senate, "appoint Ambassadors, other public Ministers and Consuls, Judges of the Supreme Court, and all other Officers of the United States" but states that "Congress may by Law vest the Appointment of such inferior Officers, as they think proper, in the President alone, in the Courts of Law, or in the heads of Departments." U.S. CONST. art. II, § 2, cl. 2. Through the Administrative Procedures

Act ("APA") Congress created ALJ positions, *see* 5 U.S.C. § 556(b)(3), and directed the head of each agency to appoint ALJs as necessary for proceedings in accordance with 5 U.S.C. §§ 556, 557, *see* 5 U.S.C. § 1302.  Plaintiff argues that at the time the ALJ rendered her decision denying Plaintiff benefits on March 28, 2017, the ALJ was an inferior officer of the United States subject to the Appointments Clause, but who had not been appointed by any individual empowered to appoint her under the same, and therefore the ALJs decision in Plaintiff's case is void as a matter of law.[4]  ECF No. 30 at 3-4, 6, 8-9.

Plaintiff's Appointments Clause challenge is grounded primarily in the Supreme Court's recent decision in *Lucia v. SEC*, 138 S. Ct. 2044 (2018).  Plaintiff contends that *Lucia*, which addresses the appointment of Security and Exchange Commission ("SEC") ALJs under the Appointments Clause, applies with equal force to Social Security Administration ALJs.  ECF No. 30 at 7-8.  In *Lucia*, the SEC instituted proceedings against Raymond Lucia alleging violations of the Investment Advisers Act.  *Lucia*, 138 S. Ct. at 2049.  Lucia's case was an adversarial proceeding heard by an SEC ALJ who rendered a decision and found that Lucia had violated the Act.  On agency appeal Lucia raised the argument that the administrative proceeding and the ALJ's decision were invalid because the ALJ was an inferior officer subject to the Appointments Clause but had not been constitutionally appointed.  *Id.* at 2050.  The SEC Commission, and later the Court of Appeals for the D.C. Circuit, rejected Lucia's challenge finding that SEC ALJs are mere employees and not "other officers" requiring constitutional appointment.  *Id.*  Lucia sought a rehearing *en banc* and the Court of Appeals for the D.C. Circuit panel divided evenly on the issue, resulting in a *per curiam* order denying Lucia's claim.  This decision directly conflicted with a 2016 decision by the Tenth Circuit Court of Appeals and Lucia filed a Petition for Certiorari to the

---

[4] Defendant's brief does not address whether SSA ALJs qualify as inferior officers under the Constitution.  ECF No. 32 at 11 n.2.

Supreme Court of the United States, requesting its review to resolve the circuit split. *Id.* Because the parties agreed that the SEC ALJs had not been appointed in accordance with the Appointments Clause of the Constitution, the Court needed only to decide whether SEC ALJs were regular employees or "officers." *Id.* at 2051. The Court determined that SEC ALJs were Officers of the United States, and therefore, were subject to the Appointments Clause. *Id.* at 2055. The Court then reversed and remanded the case for further proceedings to be heard by a properly appointed ALJ. *Id.* at 2055-56.

In relying on *Lucia*, Plaintiff concedes that the Supreme Court's ruling does not directly address the status of ALJs appointed under 5 U.S.C. § 3105 who do not preside over adversarial administrative hearings or possess power equivalent to those of SEC ALJs, but argues that these ALJs—which include SSA ALJ's—are officers that must be constitutionally appointed. ECF No. 30 at 8-9. Defendant argues the Court need not reach the ultimate issue of whether SSA ALJs are officers because Plaintiff has waived his constitutional claim by failing to timely challenge the constitutional validity of the appointment of the ALJ. ECF No. 32 at 11-12. Defendant argues that Plaintiff has failed to exhaust his constitutional claim by failing to raise it during the administrative process, thereby waiving the argument on judicial review. *Id.*

### 1. *Plaintiff has Waived his Appointments Clause Challenge*

As a general principle, a non-jurisdictional constitutional challenge is waived if the party fails to raise it at any time during administrative proceedings. *See Jones Bros., Inc. v. Sec'y of Labor*, 898 F.3d 669, 676 (6th Cir. 2018) (noting that challenges to the Appointments Clause are non-jurisdictional and should be raised at the administrative level—which ensures there is a true constitutional case presented before the judiciary steps in—and is typically required so long as there is the possibility of some relief for the action complained of); *Bennett v. SEC*, 844 F.3d 174,

188 (4th Cir. 2016) (holding that Congress intended Appointment Clause challenges to go through administrative adjudication before reaching the courts); *NLRB v. RELCO Locomotives, Inc.*, 734 F.3d 764, 794-95, 798 (8th Cir. 2013) (finding Appointments Clause challenges are non-jurisdictional and waived if not timely raised before the agency); *see also Elgin v. Dep't of Treasury*, 567 U.S. 1, 23 (2012) (holding that courts are excluded from review if constitutional challenges to federal statutes or statutory interpretations are not brought before the agency); *Freytag v. Comm'r*, 501 U.S. 868, 878-79 (1991) (holding that generally litigants must raise all issues at trial); *Id.* at 893-94 (Scalia, J., concurring) ("Appointments Clause claims, and other structural constitutional claims, have no special entitlement to review. A party waives the right to advance on appeal any nonjurisdictional claim . . . that he fails to raise at trial."). Further, "[C]ourts require administrative issue exhaustion 'as a general rule' because it is usually 'appropriate under [an agency's] practice.'" *See Sims v. Apfel*, 530 U.S. 103, 109 (quoting *United States v. L.A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 36-37 (1952) and citing to *Unemployment Compensation Comm'n of Alaska v. Aragon*, 329 U.S. 143, 154-55 (1946) as another example of judicially created issue exhaustion). On this point, Plaintiff argues that regardless of the non-jurisdictional nature of Plaintiff's claim, the holding in *Jones Bros., Inc.* and the related cases are inapplicable because the finding of waiver is predicated on regulatorily or statutorily-required exhaustion and no such regulation or statute requires agency exhaustion in the SSA context. ECF No. 33 at 6-7. The Court finds this argument unpersuasive as the focus of *Jones Bros., Inc.* is the nature of the challenge, rather than the underlying statutory or regulatory scheme. There is no distinction between the Appointments Clause challenge raised in *Jones Bros., Inc.* and Plaintiff's instant Appointments Clause challenge that would cause the nature of Plaintiff's challenge to be jurisdictional. 898 F.3d 669. Further, the fact that in *Jones Bros., Inc.* the Mine Act created exhaustion by statute does not

immunize Plaintiff's non-jurisdictional challenge from judicially-created waiver that exists as a general rule.[5] *See Sims v. Apfel*, 530 U.S. 103, 109 (citing *L.A. Tucker Truck Lines, Inc.*, 344 U.S. at 36-37; *Aragon*, 329 U.S. at 154-55). Thus, Plaintiff's Appointments Clause challenge is waived only to the extent judicially-created waiver applies to the instant case.

Plaintiff contends that there exists no regulation or statute that requires issue exhaustion before the Social Security Administration[6] and further argues that the non-adversarial nature of Social Security proceedings makes judicially-created waiver inappropriate. ECF No. 30 at 10-12. Plaintiff relies heavily on and urges the Court to follow the precedent set forth in *Sims v. Apfel*, 530 U.S. 103 (2000), to extend the *Sims* holding to its logical conclusion, and to find no waiver exists specifically in the context of SSA cases. *Id.* at 12-14.

In *Sims*, the Supreme Court determined that an individual whose benefits were denied by an ALJ did not waive judicial review on certain issues by failing to raise those issues on administrative appeal to the Appeals Council. 530 U.S. at 104-05. Juatassa Sims applied for disability benefits alleging degenerative joint disease and carpal tunnel syndrome. *Id.* at 105. Sims had a hearing before an ALJ and the ALJ denied her claim. *Id.* Sims then appealed to the Appeals Council and submitted a letter arguing the ALJ erred, but the Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. *Id.* Petitioner then sought judicial review by the U.S. District Court raising three arguments, all of which the court rejected. *Id.* She then appealed to the Court of Appeals for the Fifth Circuit who determined that it lacked jurisdiction as to her second and third arguments because they were not raised before the Appeals

---

[5] In circumstances where a plaintiff failed to raise a non-jurisdictional challenge at the administrative level, courts may in "rare cases" consider a constitutional challenge that would otherwise be waived. *Freytag*, 501 U.S. at 878-79. Plaintiff argues the line of cases addressing non-jurisdictional challenges do not apply to the instant case and, as Defendant notes, fails to argue the instant case is "one of those rare cases" in which the Court should "exercise[] its discretion" and excuse waiver. *Id.* at 878-89; ECF No. 32 at 12; *see generally* ECF Nos. 30, 33.

[6] Defendant does not contest this point.

Council. *Id.* The Supreme Court granted certiorari to determine whether Social Security claimants waive judicial review of an issue if the claimant fails to present that issue to the Appeals Council. *Id.* In finding there was no issue waiver, the Supreme Court stated the reasons for mandating issue exhaustion are weakened in the context of Social Security because proceedings are non-adversarial and investigatory in nature. *Id.* at 110. However, the Court was careful to limit its holding to only issues that were not raised before the Appeals Council. *Id.* at 107 ("Whether a claimant must exhaust issues before the ALJ is not before us."). As addressed *supra*, Plaintiff further argues that the cases Defendant cites in support of waiver are inapplicable to the case at bar because in those cases waiver is imposed under statutory or regulatory authority, and the SSA includes no such statutory or regulatory requirement. ECF No. 30 at 10-11. Plaintiff argues that the *Sims* rationale makes it clear that judicially created issue exhaustion is not required at the administrative level at all and that a plaintiff's failure to raise issues before the agency does not trigger waiver of those issues. ECF No. 30 at 9-13. However, *Sims* acknowledges that courts "have imposed an issue-exhaustion requirement even in the absence of a statute or regulation . . . . The basis for a judicially imposed issue-exhaustion requirement is an analogy to the rule that appellate courts will not consider arguments not raised before trial courts." *Sims*, 530 U.S. 108-09.

Even in the non-adversarial context of the Social Security Administration it makes good sense to bar plaintiffs from side stepping the agency and permit them to raise issues—that often are best considered by agency experts—for the first time on judicial review by the U.S. District Court. While *Sims* makes a strong case in favor of no waiver, the deliberately narrow application of its holding speaks volumes.[7] *Sims*, 530 U.S. at 107. Further, even though the Fourth Circuit

---

[7] Notably, Justice Breyer stated in his dissent, "I assume the plurality would not forgive the requirement that a party ordinarily must raise all relevant issues before the ALJ." *Sims*, 530 U.S. at 117 (citations omitted) (Breyer, J., dissenting). Further, while the Court noted that [w]here . . . an administrative proceeding is not adversarial, we think

has not addressed issue waiver in the SSA context, since *Sims* was decided, other circuits have determined agency exhaustion and waiver are alive and well. *See, e.g., Shaibi v. Berryhill*, 883 F.3d 1102, 1109 (9th Cir. 2017) (holding that claimants represented by counsel must raise all issues before the ALJ to preserve them on appeal); *Maloney v. Comm'r of Soc. Sec.*, 480 F. App'x 804, 810 (6th Cir. 2012) (finding arguments not raised before the ALJ or Appeals Council are waived); *Anderson v. Barnhart*, 344 F.3d 809, 814 (8th Cir. 2003) (holding that, despite the ALJ noting plaintiff's obesity diagnosis, plaintiff's failure to raise obesity as an impairment in his application for disability benefits or at the hearing constitutes waiver on appeal); *Mills v. Apfel*, 244 F.3d 1, 8 (1st Cir. 2001) (declining to extend *Sims* to issues not raise at the ALJ level). A review of lower court decisions in the wake of *Lucia*, both within and outside the Fourth Circuit, reveals a growing consensus that plaintiffs who do not raise an Appointments Clause challenge before the agency forfeit the argument on judicial review. *See, e.g., Parker v. Berryhill*, No. 4:17cv143, slip op. at 41 (E.D. Va. Jan. 23, 2019) (finding that the plaintiff forfeited *Lucia* argument by failing to raise it at the administrative level); *Lee v. Berryhill*, No. 2:18-cv-214, slip. op. at 13-14 (E.D. Va. Dec. 20, 2018); *Abbington v. Berryhill*, No. 1:17-00552, 2018 U.S. Dist. LEXIS 210000, at *17-18 (S.D. Ala. Dec. 13, 2018) (same); *Pearson v. Berryhill*, No. 17-4031, 2018 U.S. Dist. LEXIS 206842, at *12 (D. Kan. Dec. 7, 2018) (same); *Mann v. Berryhill*, No. 4:18-CV-3022, 2018 U.S. Dist. LEXIS 205823, at *27 (D. Neb. Dec. 6, 2018) (same); *Britt v. Berryhill*, No. 1:18-cv-00030, 2018 U.S. Dist. LEXIS 202913, at *4 (W.D.N.C. Nov. 30, 2018) (same); *Faulkner v. Comm'r of Soc. Sec.*, No. 1:17-cv-01197, 2018 U.S. Dist. LEXIS 196840, at *7-8 (W.D. Tenn. Nov. 19, 2018) (same); *Avila v. Berryhill*, No. EDCV 17-1440, 2018 U.S. Dist. LEXIS 169528, at *6 n.6 (C.D. Cal. Oct. 1, 2018) (finding that the plaintiff forfeited *Lucia* argument by failing to raise it at the

---

the reasons for a court to require issue exhaustion are much weaker," the Court did not go so far as to say judicially created issue exhaustion is never appropriate where the agency scheme is broadly non-adversarial. *Id.* at 110.

administrative level); *Williams v. Berryhill*, No. 2:17-cv-87, 2018 U.S. Dist. LEXIS 167691, at *6 (S.D. Miss. Sept. 28, 2018) (same); *Davidson v. Comm'r of Soc. Sec.*, No. 2:16-cv-00102, 2018 U.S. Dist. LEXIS 168054, at *4 (M.D. Tenn. Sept. 28, 2018) (same); *Stearns v. Berryhill*, No. C17-2031, 2018 U.S. Dist. LEXIS 156758, at *16 (N.D. Iowa Sept. 14, 2018) (same); *see also Willis v. Comm'r of Soc. Sec.*, No. 1:18-cv-158, 2018 U.S. Dist. LEXIS 206307, at *10 (S.D. Ohio Dec. 6, 2018) (denying plaintiff's motion to amend her complaint to include Appointments Clause challenge because plaintiff failed to raise it at the administrative level); *Flack v. Comm'r of Soc. Sec.*, No. 2:18-cv-501, 2018 U.S. Dist. LEXIS 195834, at *12 (S.D. Ohio Nov. 16, 2018) (same); *Page v. Comm'r of Soc. Sec.*, No. 17-13716, 2018 U.S. Dist. LEXIS 186821, at *9 (E.D. Mich. Oct. 31, 2018). *But see Muhammad v. Berryhill*, No. 18-172, slip op. at 2 (E.D. Pa. Nov. 2, 2018), ECF No. 37, attach. 1 at 2 (finding plaintiff did not waive his Appointment Clause challenge by failing to raise it before the Social Security Administration).

While there is no statutory or regulatory mandate for exhaustion, application of the general rule of exhaustion is consistent with regulations that govern the SSA. Specific to ALJ assignment, 20 C.F.R. § 404.940 permits a claimant to object to the ALJ assigned to his case *at the earliest opportunity.* If an objection is raised, the ALJ must decide to either hear the case or withdraw. *Id.* Where the ALJ opts not to withdraw the claimant may "present [his] objections to the Appeals Council as reasons why the hearing decision should be revised or a new hearing held before another [ALJ]." *Id.* Further, "[i]f circumstances warrant it . . . the Deputy Commissioner, or his or her delegate" is empowered to assign the case to a different ALJ. 20 C.F.R. § 404.929. This regulation suggests that the timing of raising objections to the ALJ's assignment is important and should be done as soon as possible, but should be raised early enough so that the ALJ or, at the latest, the Appeals Council, can address it. Specific to claims raised or issues addressed, the ALJ identifies

17

issues to be addressed at the hearing, but a claimant may object in writing *at the earliest opportunity*. 20 C.F.R. § 404.939. The ALJ must address issue objections prior to or at the administrative hearing. *Id.* The ALJ may also consider new issues that are later identified so long as the claimant notifies the ALJ of the new issues prior to the mailing of the hearing decision. 20 C.F.R. § 404.946(b)(1). Should a claimant fail to present all matters supporting disability to the ALJ, 42 U.S.C. § 405(g) requires a showing of "good cause for the failure to incorporate such evidence into the record in a prior proceeding" before remand may be permitted. These regulations suggest that the timing of raising objections to the identification of issues to be addressed is important and should be done as soon as possible, and should be raised early enough that the ALJ or, at the latest, the Appeals Council, can address it. Lastly, with respect to certain constitutional challenges, SSA regulations permit an expedited appeal process wherein a claimant may bypass the Appeals Council and proceed directly to judicial review if "the only factor preventing a favorable determination or decision is a provision in the law."[8] 20 C.F.R. §§ 404.924, 404.923. The record reflects that Plaintiff did not take advantage of any of these opportunities to have his Appointments Clause challenge addressed at the administrative level.

All of these factors lead the Court to conclude that, to preserve Plaintiff's Appointment Clause challenge for judicial review, Plaintiff was required to raise that claim before the Social Security Administration. Therefore, unlike the plaintiff in *Lucia*, Plaintiff did not raise his Appointments Clause argument "timely" and, unless some exception applies, has forfeited the same. *See Lucia*, 138 S. Ct. at 2055.

---

[8] This contradicts Plaintiff's argument that it would have been futile for Plaintiff to raise his Appointments Clause challenge before the administration and at least suggests that Social Security can and should address constitutional claims before judicial review. *See* ECF No. 30 at 16-18.

## 2. No Exception to Judicially-Created Exhaustion Applies to Plaintiff's Case

Plaintiff argues that two exceptions to judicially-created exhaustion apply to Plaintiff's case. ECF No. 30 at 15.

First, Plaintiff argues that exhaustion requirements in disability cases do not apply where a constitutional issue is presented. *Id.* Plaintiff relies on *Mathews v. Eldridge*, 424 U.S. 319 (1979), to stand for the proposition that where a constitutional violation is alleged a disability claimant is not required to exhaust his available remedies but may proceed directly to the U.S. District Court. ECF No. 33 at 15-16. In *Eldridge*, the plaintiff's previously awarded disability benefits were terminated absent a pre-termination hearing or opportunity to be heard. *Eldridge*, 424 U.S. at 323. Eldridge did not challenge his termination of benefits administratively, but rather filed a constitutional claim in federal court arguing that the agency's failure to hold a hearing prior to the termination of benefits violated plaintiff's rights to procedural due process. *Id.* at 324-25. Before addressing the merits, the Supreme Court considered whether, because plaintiff failed to seek an administrative remedy, the U.S. District Court had jurisdiction over the suit. *Id.* at 326-27. The Court determined that the District Court did have jurisdiction and plaintiff was not required to exhaust his constitutional claim administratively because it was "unrealistic to expect that the Secretary would consider substantial changes in the current administrative review system at the behest of a single aid recipient raising a constitutional challenge in an adjudicatory context" and because Eldridge's constitutional claim was "entirely collateral to his substantive claim of entitlement." *Id.* at 330. The Court noted that plaintiff's claims were subject to exhaustion requirements but that those requirements were waivable if no further review within the agency was warranted. *Id.* The Court determined that given the circumstances it was appropriate to waive the administrative exhaustion requirement. *Id.* at 330-32.

Plaintiff argues that, like in *Eldridge*, his constitutional claim is collateral to his substantive claim and therefore is not subject to exhaustion. ECF No. 30 at 16. However, Plaintiff's argument fails to account for subsequent authority. Plaintiff's position that constitutional claims are collateral and therefore not subject to exhaustion is inconsistent with *Elgin*, in which the Supreme Court stated that constitutional claims that serve as a "vehicle by which [a plaintiff] seek[s] to reverse" an administrative decision are "[f]ar from . . . wholly collateral" to the substantive claims. 567 U.S at 22 (finding that a constitutional challenge is not collateral to the CSRA scheme, because the challenge is by CSRA-covered employees for CSRA-covered employment action, and the relief sought is one that the CSRA routinely affords); *see also Bennett*, 844 F.3d at 187 (rejecting the argument that plaintiff's constitutional claim was wholly collateral because it "arose out of the enforcement proceeding" and "appears to be the vehicle by which [plaintiff] seeks to vacate the ALJ's initial findings"). This demonstrates that not all constitutional challenges are "wholly collateral" and Plaintiff's interpretation of *Eldridge* that all constitutional claims are wholly collateral is overbroad. The question then becomes whether an Appointments Clause challenge is one that is wholly collateral to a plaintiff's substantive claim. *Lucia* itself resolves this issue. *Lucia* states that an Appointments Clause challenge must be raised "timely" before the agency. 238 S. Ct. at 2055. This establishes that such a claim is subject to exhaustion and, therefore, cannot be wholly collateral to a plaintiff's substantive claim. Further, while the Supreme Court determined in *Eldridge* that the circumstances warranted waiver of the exhaustion requirement, 424 U.S. at 330-32, it also recognized in *Freytag* that courts should only excuse a plaintiff's failure to exhaust his claims administratively in "rare cases," 501 U.S. at 878-79. As stated *supra*, Plaintiff does not argue his is a "rare case." In fact, Plaintiffs is just one in a flood of cases now challenging the appointment of ALJs in the wake of *Lucia*. Therefore, the Court rejects Plaintiff's

argument that *Eldridge* creates an exception to the exhaustion requirement for Plaintiff's Appointments Clause challenge.

Second, Plaintiff argues that issue exhaustion is inapplicable to Plaintiff's case because it would have been futile for Plaintiff to raise the Appointments Clause issue before the Social Security Administration. ECF No. 30 at 16-18. Plaintiff relies on *Bethesda Hospital Association v. Bowen*, 485 U.S. 399 (1988), referenced in Justice Breyer's dissent in *Sims*, 530 U.S. at 115 (Breyer, J., dissenting), as an example of a circumstance in which raising an issue before the agency would be futile, and therefore, a failure to do so would not bar judicial review. *Id.* at 16-17. However, unlike the instant case, in *Bethesda Hospital Association* the plaintiffs merely failed to raise their argument at the first of a two-step agency review process, and while the Supreme Court did find it was futile to raise their argument on review by a fiscal intermediary at the first step, the Court did not hold that plaintiffs were exempt from raising the issue before the agency at all. 485 U.S. at 404-05. Rather, the Court noted "[t]he [agency] has a role in shaping the controversy that is subject to judicial review" despite lacking "the authority to declare regulations invalid." *Id.* at 406-07. Because the plaintiffs in *Bethesda Hospital Association* did timely raise their claim before the agency upon subsequent review, that case presents a different question than the case at bar and is, therefore, unpersuasive. Further, while individual ALJs may not have the authority to cure defects in their own appointment under the Appointments Clause, such an absence of power is irrelevant as it is clear that if timely brought to the attention of the administration it could have cured such defects by having the Commissioner, a department head, properly appoint existing ALJs without further incident. *Jones Bros., Inc.*, 898 F.3d at 677 ("What matters . . . is that the Commission was fully suited to entertain the [Appointments Clause] claim and remedy any error at the time of [the plaintiff's] petition for Commission review. Confirming the point, the

Commission has since preemptively acted to cure this alleged constitutional defect by having every Commissioner ratify the appointment of every [ALJ]. . . . [W]e generally expect parties . . . to raise their as-applied or constitutional-avoidance challenges before the Commission and courts to hold them responsible for failing to do so."); *see also Page*, 2018 U.S. Dist. LEXIS 186821 at *3 (citing to the Solicitor General's memorandum directing all agency heads to properly appoint their ALJs following the *Lucia* decision).   Plaintiff relies on an Office of General Counsel Emergency Message to ALJs issued on January 30, 2018, which directs SSA ALJs to acknowledge but refrain from discussing or making findings on Appointments Clause arguments if raised before them, to again demonstrate that it would have been futile to raise his constitutional claim before the ALJ. ECF No. 30 at 17-18, attach. 2.   However, this directive came after Plaintiff's ALJ hearing and after the Commissioner rendered her final decision.   The fact that ALJs were directed at some later time to not address the same argument Plaintiff has now raised has no bearing on the ALJ's or the Commissioner's ability to address Plaintiff's Appointment Clause challenge.   As stated *supra*, it is irrelevant whether the ALJ himself could have addressed Plaintiff's claim.   Therefore, Plaintiff has not shown that it would have been futile for him to administratively exhaust his constitutional claim.

The Court **FINDS** that Plaintiff has waived his Appointments Clause challenge by failing to raise it during the administrative process.   Therefore, the Court need not decide whether the ALJ is an officer who is subject to the Appointments Clause.

## B. The ALJ's Findings Were Not Supported by Substantial Evidence.

Plaintiff argues that the ALJ's decision is not supported by substantial evidence, specifically, because the ALJ failed to resolve an apparent conflict between the Dictionary of Occupational Titles ("DOT") and the VE's testimony regarding jobs in the national economy

available to Plaintiff in light of his RFC that includes restrictions that are inconsistent with light work. ECF No. 30 at 23-28. Responsively, the Commissioner argues the ALJ's decision was supported by substantial evidence because there is no conflict between the jobs stated by the VE, and even if there was a conflict it is not an "apparent" one such that the ALJ was obligated to resolve it. ECF No. 32 at 23-29 (quoting *Pearson v. Colvin*, 810 F.3d 204, 209 (4th Cir. 2015) to stand for the proposition that the ALJ must identify and resolve only apparent conflicts between a VE's testimony and the DOT).

The ALJ has a duty to identify and resolve all apparent conflicts between the DOT job description and the VE's testimony. *See Thomas v. Berryhill*, No. 17-2215, 2019 U.S. App. LEXIS 1312, at *10-11 (4th Cir. Jan. 15, 2019), *as amended* February 22, 2019; *Pearson*, 810 F.3d at 208 (quoting SSR 00-4p, 2000 SSR LEXIS 8, *9). The Court of Appeals for the Fourth Circuit in its recent decision in *Thomas v. Berryhill* better defined the parameters of its earlier holding in *Pearson*, 810 F.3d 204. The *Thomas* Court stated:

> An ALJ cannot rely unquestioningly on a VE's testimony. Rather, an ALJ must ensure that any "apparent" conflicts between the [DOT] and the VE's testimony are reasonably resolved. SSR 00-4p, 2000 LEXIS 8, 2000 WL 1898704 at *2. To that end, the ALJ must ask the VE whether his or her testimony conflicts with the DOT. If the answer is "yes," the ALJ "must elicit a reasonable explanation for the conflict before relying on" the testimony. *Id.* But even if the VE answers "no," the ALJ has an affirmative "duty to make an independent identification of apparent conflicts." *Pearson v. Colvin*, 810 F.3d 204, 210 (4th Cir. 2015). This means that the ALJ must recognize and resolve ways in which a VE's testimony "seems to, but does not necessarily" conflict with the "express language" of the DOT—even if the conflict is not "obvious." *Id.* at 209.

*Thomas*, 2019 U.S. App. LEXIS 1312 at *10-11. In light of *Thomas*, it appears the ALJ has erred by "rely[ing] unquestioningly on the VE's testimony." *Id.* at *10.

According to SSR 83-10, "the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." 1983 SSR LEXIS 30, at *14.

"A job is also in this category when it involves sitting most of the time but with some pushing and pulling of arm-hand or leg-foot controls, which require greater exertion than sedentary work; e.g., mattress sewing machine operator, motor-grader operator, and road-roller operator (skilled and semiskilled jobs in these particular instances)." *Id.* at *13-14. Importantly, "relatively few unskilled light jobs are performed in a seated position." *Id.* at *14.

In her RFC, the ALJ limited Plaintiff to a limited range of light work such that he would not have to walk/stand more than four hours. R. at 19. In her hypothetical to the VE, the ALJ asked if there were jobs available in the national economy with this restriction (among certain others). R. at 58. The VE responded that these restrictions would be classified as reduced light and such limitations would preclude the prior three jobs offered by the VE in response to the ALJ's first hypothetical. R. at 58-59. However, the VE stated "yes" other jobs would exist and described three available jobs: a ticket seller, mail sorter, and parking lot cashier. R. at 59. The ALJ never asked the VE whether her testimony conflicted with the DOT. *See generally* R. at 57-60. The DOT's description of these jobs does not reflect the extent to which these jobs require "pushing and pulling of arm-hand or leg-foot controls." SSR 83-10, 1983 SSR LEXIS 30 at *14. Consequently, there is an apparent conflict between the DOT and the VE's testimony because the VE never explained how and why these jobs fit into the "light" classification when Plaintiff could not walk/stand the six hours delineated for light work in SSR 83-10, whether these jobs required "pushing and pulling of arm-hand and leg-foot controls," or whether some other reason resolved the conflict between Plaintiff's RFC limitation regarding his ability to stand and walk.

Notably, the ALJ never asked the VE if her testimony was consistent with the DOT, despite the fact that her decision affirmatively states "[The VE] testified that her testimony is consistent

24

with the information contained in the <u>DOT</u> and her professional experience (Ex.10B)."[9] *Compare* R. at 25 *with* R. at 57-60. *Thomas* specifically describes the approach an ALJ must take to ensure than any apparent conflict is resolved. *See* 2019 U.S. App. LEXIS 1312 at *10-11. The "ALJ cannot rely unquestioningly on a VE's testimony." *Id.* at *10. The "ALJ is tasked to recognize and resolve ways in which the VE's testimony 'seems to, but does not necessarily' conflict with the 'express language' of the DOT—even if the conflict is not 'obvious.'" *Id.* at *11 (quoting *Pearson*, 810 F.3d at 209). "To that end, the ALJ *must* ask the VE whether his or her testimony conflicts with the DOT." *Id.* (emphasis added). This the ALJ failed to do.

By ignoring the apparent conflict as described above, and by failing to ask the VE whether her testimony conflicted with the DOT, the ALJ improperly "rel[ied] unquestioningly on the VE's testimony." *Id.* at *10. Therefore, the Court **FINDS** that substantial evidence does not support the ALJ's findings.

## VI. RECOMMENDATION

For the reasons stated herein, the undersigned **RECOMMENDS** that Plaintiff's Motion for Summary Judgment, ECF No. 29, be **GRANTED**, the Commissioner's Motion for Summary Judgment, ECF No. 31, be **DENIED**, and the final decision of the Commissioner be **VACATED** and **REMANDED**.

## VII. REVIEW PROCEDURE

By receiving a copy of this Report and Recommendation, the parties are notified that:

1. Any party may serve on the other party and file with the Clerk of this Court specific written objections to the above findings and recommendations within fourteen days from the date this Report and Recommendation is mailed to the objecting party, *see* 28 U.S.C. § 636(b)(1)(C)

---

[9] The exhibit to which the ALJ cites is the VE's resume and does not support the proposition that the VE stated her testimony was consistent with the information contained in the DOT.

and Federal Rule of Civil Procedure 72(b), computed pursuant to Federal Rule of Civil Procedure Rule 6(a). A party may respond to another party's specific written objections within fourteen days after being served with a copy thereof. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

2. A United States District Judge shall make a *de novo* determination of those portions of this Report and Recommendation or specified findings or recommendations to which objection is made. The parties are further notified that failure to file timely specific written objections to the above findings and recommendations will result in a waiver of the right to appeal from a judgment of this Court based on such findings and recommendations. *Thomas v. Arn*, 474 U.S. 140 (1985); *Carr v. Hutto*, 737 F.2d 433 (4th Cir. 1984), *cert. denied*, 474 U.S. 1019 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984), *cert. denied*, 467 U.S. 1208 (1984).

The Clerk is **DIRECTED** to forward a copy of this Report and Recommendation to all counsel of record.

Lawrence R. Leonard
United States Magistrate Judge

Norfolk, Virginia
March 6, 2019